IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                      Criminal No. 3:23cr39

SHALIK RASHEEM MITCHELL,

      Defendant.

## MEMORANDUM OPINION

      This matter is before the Court on the DEFENDANT'S MOTION
TO SUPPRESS AND INCORPORATED MEMORANDUM OF LAW (ECF No. 18)
("original Motion") and DEFENDANT'S REPLACEMENT BRIEF IN SUPPORT
OF MOTION TO SUPPRESS (ECF No. 28) ("renewed Motion")
(collectively referred to as the "Motions"). For the reasons set
forth below and on the record during the hearing on July 10,
2023, the Motions were denied in a previous ORDER (ECF No. 34)
entered on July 11, 2023.

## BACKGROUND

### I. Procedural Background

      On March 21, 2023, Shalik Rasheem Mitchell ("Mitchell") was
charged with one count of Possession of a Firearm and Ammunition
by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). See
ECF No. 1. Mitchell was arrested on that charge on March 27,
2023 and has remained in federal custody since that time. ECF
Nos. 5 and 15. Mitchell filed the original Motion on April 13,

2023, and a response and reply were filed on April 27, 2023 and May 4, 2023, respectively. The Court heard testimony on the original Motion during an evidentiary hearing on May 16, 2023. ECF No. 24. At the end of the hearing, the Court continued generally the jury trial set to begin on June 5, 2023 pending resolution of the Motions and ordered further briefing that focused on the objective facts rather than the subjective beliefs of the individual officers. ECF No. 25; ECF No. 27 at 81-83. The Court heard oral argument on the matter on July 10, 2023.

## II. Factual Background

The facts, as delineated in the testimony and evidence given at the evidentiary hearing on May 16, 2023, are as follows.

At around 9:00 PM on November 17, 2022, Mitchell was pulled over by Richmond City Police for driving recklessly on Hull Street. ECF No. 27 at 10:11-13, 13:4-9. Before the traffic stop, the officers observed Mitchell's vehicle pass other traffic at a high rate of speed that exceeded eighty miles per hour. Id. at 13:20-14:18. When the officers activated their lights and sirens, Mitchell began to slow down, but he did not immediately come to a stop. Id. at 16:3-12. As the vehicle slowed down, the officers observed "furtive movements" by Mitchell and the front

2

seat passenger both of whom leaned to the right and "dipp[ed] their shoulders to the right." Id. at 17:1-16. While that conduct occurred, Mitchell swerved the vehicle to the right, nearly going off the street. Id. at 18:6-12. Thereafter, Mitchell finally stopped his vehicle. Id. at 18:24-19:2.

There were three other individuals in the car with Mitchell: a passenger in the front seat and two other passengers in the back seat. ECF No. 27 at 19:18-24. As soon as Detective Ja-Ontay Wilson approached the driver's side of the vehicle, Mitchell admitted to speeding. Id. at 21:2-3. Detective Wilson then asked Mitchell for a driver's license or other identification, and Mitchell, at least twice, started to lean to his right side, then stopped, and said that he did not have identification with him. Id. at 21:4-23. Detective Wilson believed that Mitchell's conduct (starting to lean to the right and then stopping) was an attempt to not draw attention to the right side of his seat. Id. at 22:2-5.

Mitchell also admitted to Detective Wilson that he had been "sipping." ECF No. 27 at 21:13. Detective Wilson understood that to be an admission that Mitchell had been drinking alcohol. Id. at 22:15-19. Detective Wilson could also smell alcohol on Mitchell's breath. Id. at 22:19-21. During this interaction with Mitchell, Detective Wilson also observed that the front seat

3

passenger was sitting as "stiff as a statue." Id. at 26:17-21. From that observation, Detective Wilson concluded that the passenger did not want to attract any attention to the right side of his seat. Id. at 26:25-27:6.

Detective Wilson then ordered Mitchell out of the vehicle after inquiring whether there were any weapons on him or in the car, to which Mitchell responded in the negative. ECF No. 27 at 27:8-24. A pat down search of Mitchell did not reveal any weapons. Id. at 27:24-25. Detective Wilson then ordered the front seat passenger to exit the car, and a pat down of the passenger did not reveal any weapons. Id. at 28:2-21.

Detective Wilson then opened the rear driver's side door and asked the rear seat passenger (an older gentleman) to exit the vehicle. Gov. Ex. 1 (Clip 2 at 1:57-59). The man complied and was patted down, but no weapons were found. Id. at 2:05-2:11. Finally, the fourth passenger (an older woman with a cane) was asked to step out of the car, and she complied. Id. at 2:15-2:44. She was not patted down. Id. All of the occupants of the vehicle then waited at the rear of the vehicle with two other officers (Officer Lucas Hunsaker and Officer Lazarus, whose first name is unknown to the Court). Id. at 2:44.

Immediately after the older gentleman was asked to step out of the car, Detective Wilson directed his flashlight into the

4

backseat, and there he saw an open bottle of alcohol and a backpack with "a tied baggie corner sticking out" that appeared consistent with narcotics based on the presence of a "white material"[1] in the baggie. ECF No. 27 at 29:10-25, 30:20-25, 31:6-10. At that point, Detective Wilson handcuffed Mitchell and placed him under detention. Id. at 32:20-25. After conducting a search of the backpack,[2] Detective Wilson searched the front driver's seat, including the center console, to see if he could recover any narcotics or alcoholic beverages based on the previous furtive movements that he observed. Id. at 37:16-22.

Finding nothing, Detective Wilson moved to the front passenger side of the vehicle where the door was already open, and, without entering the vehicle, he noticed "a firearm jammed in between the door and the seat" where the front seat passenger had previously been making furtive movements. Id. at 37:22, 39:9-40:9. An extended magazine was on the firearm. Id. at 39:23-25. Based on that discovery, the fact that it is illegal to have an extended magazine on a firearm without a permit in Virginia, and the fact that Mitchell and the front seat passenger previously denied that there were firearms in the

[1] The "white material" turned out to be a paper towel. ECF No. 27 at 62:6-8.

[2] Because the search of the backpack is not pertinent to deciding the Motions, it is not discussed in more detail.

5

vehicle, Detective Wilson placed the front seat passenger under investigative detention until he would be "able to interview both occupants." Id. at 40:25-41:8.

Mindful of those facts, Officer Hunsaker then performed a re-search of the driver's seat and the console to ensure that Detective Wilson did not miss anything during the first search. ECF No. 27 at 42:9-43:11, 74:6-17. During that search, Officer Hunsaker found a Stoeger firearm wedged between the driver's seat and the center console. Id. at 42:12-44:15. It was then removed from the vehicle. Id. at 44:3-4. Following the discovery of the second firearm, Mitchell was also placed under detention and was eventually arrested and charged with reckless driving. Id. at 50:22-25, 68:13-19.

### III. Parties' Arguments

At the evidentiary hearing, the Court instructed the parties to revise and narrow their initial arguments to conform with the Fourth Amendment's requirement of objectivity. ECF No. 27 at 81-83. Accordingly, only the arguments relating to the renewed Motion are summarized below.

### a. *Mitchell's Position*

First, Mitchell argues that Officer Hunsaker's second protective sweep of the driver's seat was unlawful because Mitchell and the other passengers were not in the car, so they

6

did not have access to the weapons, and there was no risk that anyone would be able to obtain the weapons at that point during the traffic stop. ECF No. 28 at 6-7. Mitchell bases this argument in the Supreme Court of the United States and Fourth Circuit precedent, explaining that the distillation of different cases instructs that "police may search for weapons [in] any area the detainee could have accessed," which was not the inside of the vehicle. Id. at 7-8 (quotations omitted). Mitchell also contests the Government's previous argument that the traffic stop could have ended with everyone being released by pointing to the fact that there is no evidence to support the idea that there was a "reasonably particularized suspicion that Mr. Mitchell, or any of his passengers, was in fact so 'dangerous' that they . . . needed to be separated from any weapons . . . after that stop was concluded," which is required to perform a Terry frisk. Id. at 8-9. Mitchell argues that, even assuming that he could be considered "armed" (which he does not concede), a reasonable officer could not conclude that he was "dangerous" because (1) he followed all directions and remained calm; (2) none of the officers had ever encountered Mitchell before that night, so they did not know prior information that would allow

7

them to consider Mitchell dangerous; (3) under Virginia law, owning a firearm is legal, so one cannot be considered dangerous simply because they own a gun; and (4) the stop was over when the officers searched the vehicle. Id. at 9-13.

Second, Mitchell contends that, based on United States v. Graham, 686 F. App'x 166 (4th Cir. 2017), Officer Hunsaker cannot rely on an "alternative ground" to justify the second protective sweep if that was not his initial justification for the sweep, even when examining the facts of the case in an objective manner. ECF No. 28 at 13-14. Equating the facts of this case against Graham (discussed below), Mitchell contends that Officer Hunsaker cannot rely on the discovery of the alcohol bottle in the backseat to justify the protective sweep when he initially justified the search on the discovery of the first firearm. Id. at 14-16.

### b. Government's Position

The Government counters that, for four reasons, the officers had probable cause to justify the search of Mitchell's vehicle, or at least a reasonable suspicion to conduct a "Terry frisk" of the vehicle for officer safety. ECF No. 31 at 1. First, the officers had probable cause to believe that Mitchell had been consuming alcohol while driving in violation of Va.

8

Code §§ 18.2-323.1(A) and 18.2-266[3] because (i) Mitchell was driving erratically; (ii) Detective Wilson could smell alcohol on Mitchell's breath; (iii) Mitchell admitted he was "sipping"; and (iv) the open bottle of alcohol was lawfully found in his backseat. Id. at 7-8. Second, the Government argues that there was probable cause to search the entire vehicle based on Detective Wilson's suspicion that there were narcotics in the vehicle based on the plastic baggie he saw sticking out of the backpack. Id. at 8-9. Third, the Government contends that there was probable cause to conduct a second search of the vehicle after the first firearm was discovered near the front passenger seat because (i) Mitchell and the front passenger had lied about firearms being in the car; and (ii) the officers previously observed furtive movements from both individuals before conducting the stop, so it was reasonable to believe that there was another concealed weapon. Id. at 9-10.

Fourth, in the alternative, the Government argues that the officers had at least a reasonable suspicion to believe that

---

[3] Under Va. Code § 18.2-323.1(A), "[i]t is unlawful for any person to consume an alcoholic beverage while driving a motor vehicle upon a public highway of the Commonwealth."

Similarly, under Va. Code § 18.2-266, "[i]t shall be unlawful for any person to drive or operate any motor vehicle . . . (ii) while such person is under the influence of alcohol[ or] (iii) while such person is under the influence of any narcotic drug."

Mitchell was armed and dangerous such that a search of Mitchell's vehicle would be warranted under Terry v. Ohio, 392 U.S. 1 (1968). ECF No. 31 at 12-13. The Government contends that "the following specific and articulable facts" support the officers' conclusion that Mitchell was armed and dangerous: (i) Mitchell was traveling at high rates of speed at night and driving erratically; (ii) he did not come to an immediate stop when Detective Wilson initiated the traffic stop; (iii) Detective Wilson observed furtive movements that were indicative of concealing contraband; (iv) Mitchell admitted to "sipping"; (v) Detective Wilson could smell alcohol coming from Mitchell's breath; (vi) Mitchell and the front seat passenger both avoided their right sides where they had previously been making furtive movements; and (vii) the occupants of the car were never placed under arrest and were only standing a few feet away from the vehicle. Id. at 12-14. Further, the Government relies on Michigan v. Long, 463 U.S. 1032 (1983), to support its contention that, because Mitchell and the other occupants were not under arrest, they could have been released or broken away at any time and obtained the weapon to use against the officers. ECF No. 31 at 14-15. Additionally, the Government argues that the legality of possessing the firearms is irrelevant because, whether legal or not, simply possessing a firearm in combination

with the other circumstances gives a reasonable officer an objective basis to conclude that an individual is armed and dangerous. Id. at 15.

In response to Mitchell's argument that the Fourth Circuit's decision in Graham applies here, the Government argues that the two cases can easily be distinguished because, in this case, "probable cause was not developed after the fact." ECF No. 31 at 10-12. The Government contends that Officer Hunsaker himself had probable cause to search the vehicle given his knowledge of (1) the furtive movements, (2) the fact that Mitchell admitted he was drinking, (3) the discovery of the first firearm from the front passenger side of the vehicle, and (4) the lies told about the absence of firearms. Id. at 12.

Lastly, the Government argues that suppression is not an appropriate remedy because the officers did not act deliberately, recklessly, or in a grossly negligent manner. ECF No. 31 at 16.

c. Mitchell's Reply

In his reply, Mitchell contends that there was no probable cause to search the vehicle for three reasons: (1) there were no narcotics in plain view; (2) the officers had already seized the bottle of alcohol from the backseat, so "the warrantless intrusion should have ended because his objective of his

11

investigation had been fulfilled"; and (3) the plain-view doctrine that warranted the seizure of the first firearm does not apply to searches. ECF No. 32 at 1-4. As for his reliance on Graham, Mitchell argues that Officer Hunsaker cannot rely on Detective Wilson's discovery of the alcohol bottle as a basis for probable cause because there is nothing in the record to suggest that Officer Hunsaker knew about the alcohol bottle before conducting the second protective sweep. Id. at 5. Lastly, Mitchell argues that suppression is the proper remedy because it is "[t]he best way to ensure that the police take seriously their Fourth Amendment obligations." Id. at 6.

## DISCUSSION

### I. Legal Standard

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This amounts to a default rule that "law enforcement must obtain a warrant, grounded in probable cause, before seizing or searching individuals." United States v. Harris, No. 3:21-cr-18, 2021 WL 2384554, at *3 (E.D. Va. June 10, 2021) (citing United States v. Yengel, 711 F.3d 392, 396 (4th Cir. 2013)). However, there are several exceptions to the warrant requirement. United States v. Currey, 965 F.3d 313, 321 (4th Cir. 2020). At least three exceptions are relevant to this

12

case: plain-view doctrine, Terry frisks, and the automobile search exception. "Where law enforcement seize or search an individual without a warrant and under circumstances in which no exception to the warrant requirement applies, the Fourth Amendment is violated, and the evidence found as a result of the violation must be suppressed." Harris, 3:21-cr-18, at *3 (citing Wong Sun v. United States, 371 U.S. 471, 484-85 (1963)).

## a. *Plain-view Doctrine*

The "plain view" doctrine "permits warrantless seizure by police of private possessions where three requirements are satisfied": (1) the police must lawfully be in a location from which they can view the particular area; (2) "the officer must discover incriminating evidence 'inadvertently'";[4] and (3) "it must be 'immediately apparent' to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure." Texas v. Brown, 460 U.S. 730, 736-37 (1983) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465-68, 470 (1971)); see also United States v. Runner, 43 F.4th 417, 421 (4th Cir. 2022) (defining the second prong as "the officer had a lawful right of access to the object itself" (cleaned up)).

---

[4] In this context, "inadvertently" means that the officer "may not know in advance of the location of certain evidence and intend to seize it, [yet] rely on the plain view doctrine only as a pretext." Texas v. Brown, 460 U.S. 730, 737 (1983).

Evidence of illegal activity discovered in plain view can serve as the basis for probable cause to conduct a more extensive search. United States v. Hall, 397 F. App'x 860, 862 (4th Cir. 2010) (unpublished).

## b. Search Pursuant to Terry v. Ohio

Often referred to as a "Terry frisk," police officers may conduct "a reasonable search for weapons for the protection of [that] police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry v. Ohio, 392 U.S. 1, 27 (1968). The purpose of the search is protective, meaning that the officer is looking for weapons that could harm them or others in the vicinity. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). Accordingly, the officer must rely on "specific reasonable inferences" that the individual is both armed and dangerous, drawn from the facts in light of his experience, to objectively determine whether such a search is warranted. Terry, 392 U.S. at 27. In the context of a traffic stop, two requirements must be met to conduct a frisk: (1) the officer must have conducted a lawful stop; and (2) "the officer [must] reasonably suspect that person is armed and therefore dangerous." United States v. Robinson, 846 F.3d 694, 700 (4th Cir. 2017) (en banc) (emphasis omitted).

14

Whether such reasonable suspicion exists relies on the totality of the circumstances, and officers can consider a range of factors, including "[a] suspect's suspicious movements," "the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect," to determine whether there is "a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

The Supreme Court has also extended Terry frisks to frisks of vehicles if (1) the search is "limited to those areas in which a weapon may be placed or hidden" and (2) "the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1050 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). This standard is different from the more-typical search of a car without a warrant, which requires a finding of probable cause that the vehicle has evidence of a crime or contraband. California v. Acevedo, 500 U.S. 565, 569 (1991); United States v. Johnson, 599 F.3d 339, 347 (4th Cir. 2010).

## c. Automobile Search Exception

Because vehicles "'can quickly be moved out of the locality or jurisdiction in which [a] warrant must be sought,'" warrantless searches of vehicles are authorized if they are supported by "probable cause to believe that the vehicle contained evidence of crime." California v. Acevedo, 500 U.S. 565, 569 (1991) (quoting Carroll v. United States, 267 U.S. 132, 153 (1925)). This includes the "search of compartments and containers within the vehicle whose contents are not in plain view" as long as "a magistrate could authorize a warrant particularly describing the place to be searched." United States v. Ross, 456 U.S. 798, 800 (1982). However, if there is only probable cause to search a container within a vehicle but not the whole vehicle, the police may only search that container. Acevedo, 500 U.S. at 580.

## II. Analysis

Mitchell raises a number of arguments for why the second search of his vehicle was unconstitutional, but none of those arguments counter the fact that Officer Hunsaker had probable cause under two lines of argument presented by the Government: (1) the discovery of the first firearm in plain view, and (2)

16

the alcohol-related evidence.[5] Accordingly, for the reasons discussed below, the Court denied Mitchell's Motions to Suppress.

## a. *Probable Cause to Conduct a Second Search*

As is clear from the following testimony and evidence presented during the hearing, Officer Hunsaker had probable cause to conduct the second search of the vehicle on two grounds. First, Officer Hunsaker had probable cause to search for weapons based on the following information: (1) he observed Mitchell driving erratically, which included Mitchell swerving off to the right (ECF No. 27 at 71:12-15); (2) as is captured on the body camera footage worn by Detective Wilson, Officer Hunsaker was aware that Detective Wilson had observed the furtive movements to the right (Gov. Ex. 1 (Clip 1 at 0:47-1:10)); (3) as is captured by the body camera footage worn by Officer Hunsaker, he was standing next to Detective Wilson when Mitchell stated that there were no weapons in the vehicle (Gov.

---

[5] The Government also argued that Officer Hunsaker had probable cause to search the vehicle for narcotics based on the plain-view discovery of the baggie containing "white material" in the rear of Mitchell's vehicle. ECF No. 31 at 8-9. This argument is unavailing because, once a reasonable officer pulled the baggie out of the backseat, he or she would have recognized that the "white material" was a paper towel rather than narcotics, which would have terminated probable cause on that basis. Accordingly, this argument will not be addressed beyond this footnote.

Ex. 2 at 2:47-2:53);[6] and (4) he knew that Detective Wilson had recovered a firearm concealed in the front passenger side of the vehicle to the right of the seat, which violated Virginia Code § 18.2-287.4 (ECF No. 37 at 72:22-73:15; ECF No. 31 at 9-10).[7] Based on the totality of the circumstances, a reasonable officer would have had probable cause to conduct a search of the vehicle, so Officer Hunsaker's second sweep did not violate Mitchell's Fourth Amendment rights. California v. Acevedo, 500 U.S. 565, 569 (1991).

Alternatively, the officers could derive probable cause from the following alcohol-related evidence: (1) Detective Wilson observed Mitchell speeding and driving erratically (ECF No. 27 at 71:12-15); (2) Mitchell and the passenger made furtive movements to the right (Gov. Ex. 1 (Clip 1 at 0:47-1:10)); (3) Mitchell admitted that he had been "sipping," which the officers understood as an admission to drinking alcohol, especially when

---

[6] This fact supports a finding of probable cause because, after being told there were no firearms in the vehicle, the officers located a firearm, which would lead a reasonable officer to infer that there could be additional firearms in the vehicle.

[7] In his Reply brief, Mitchell rightfully concedes that "the seizure of the gun found in the passenger side of Mr. Mitchell's car was justified by the plain-view doctrine." ECF No. 32 at 3. Accordingly, it is permissible for a piece of evidence seized in a constitutionally-sound manner to be the basis of probable cause for a search. United States v. Hall, 397 F. App'x 860, 862 (4th Cir. 2010) (unpublished).

18

combined with the smell of alcohol coming from Mitchell (ECF No. 27 at 22:15-23:4); (4) Mitchell went to retrieve identification from his right side but stopped short on two occasions, indicating to Detective Wilson that Mitchell was trying not to draw attention to his right side (ECF No. 27 at 21:7-22:5);[8] and (5) Detective Wilson legally located an open bottle of alcohol in the backseat of the vehicle (ECF No. 27 at 29:10-21). Based on this evidence, there was probable cause to believe that Mitchell was violating either Virginia Code § 18.2-323.1(A) or Virginia Code § 18.2-266, so the officers could legally search the vehicle for further evidence of a violation of those statutes. Accordingly, Officer Hunsaker's search of the vehicle can also be justified by this line of argument.

## b. Mitchell's Arguments Are Unavailing

Mitchell makes five arguments that cannot overcome the finding that there was probable cause to conduct the second search but will still be addressed.[9]

---

[8] During oral argument, the Government described this fact as Mitchell appearing to be nervous. However, based on a review of Detective Wilson's testimony, Detective Wilson never directly testified that Mitchell appeared nervous but, instead, described this situation, which can be interpreted as being nervous.

[9] Mitchell makes more than five arguments for why the Court should suppress the seizure of the firearm, but these are the five arguments that are relevant to a finding of probable cause

19

First, Mitchell argues that Officer Hunsaker did not have probable cause to conduct a second search because, among other reasons, the plain-view doctrine only provides a Fourth Amendment exception for seizures, not searches. ECF No. 32 at 3. This precept is correct as a matter of law. United States v. Jackson, 131 F.3d 1105, 1108 (4th Cir. 1997) ("The 'plain-view' doctrine provides an exception to the warrant requirement for the seizure of property, but it does not provide an exception for a search." (emphasis in original)). However, the Government is not arguing that the plain-view doctrine authorized the second search of the vehicle. Nor could it. Rather, the Government is arguing that the seizure of the first firearm under the plain-view doctrine supported the finding that there was probable cause to conduct another search, which is a meritorious argument as recounted above. ECF No. 32 at 9-10.

Second, Mitchell argues that, because possessing a firearm is not illegal in Virginia, recovering a firearm would not give a reasonable officer probable cause to search the vehicle. ECF No. 28 at 11-13. This argument is misguided for two reasons. First, while some firearms may be legally possessed in Virginia, the first firearm recovered on the front passenger side of the

---

based on the seizure of the first firearm and the alcohol-related evidence.

20

vehicle could not because, as the Government notes, it is unlawful "to carry a loaded semi-automatic center-fire rifle or pistol that . . . is equipped at the time of the offense with a magazine that will hold more than 20 rounds of ammunition" without a permit. ECF No. 31 at 9-10; Va. Code § 18.2-287.4(a). Second, Mitchell had previously told the officers that there were no firearms in the vehicle, so, once an illegal firearm was found in the vehicle contrary to Mitchell's statement, a reasonable officer could conclude that it was probable that additional illegal firearms were in the vehicle and conduct a more thorough search. Accordingly, the fact that possessing certain firearms is legal in Virginia will not save Mitchell's Motions.

Third, Mitchell relies on United States v. Davis, 997 F.3d 191 (4th Cir. 2021), to argue that the existence of the first firearm cannot serve as the basis for probable cause. ECF No. 32 at 4-5. However, Mitchell's reliance on Davis is misplaced. In Davis, the Fourth Circuit held that the warrantless search of the defendant's car was unconstitutional under the automobile exception because the police could not garner probable cause from the following facts: (1) the defendant fled during the traffic stop; (2) the defendant was subsequently arrested; and (3) the police discovered cash on his person. 997 F.3d at 201.

In contrast, there was enough evidence in this case from which a reasonable officer could determine that there was probable cause to believe Mitchell's vehicle contained contraband based on the furtive movements to the right, Mitchell's statement that there were no firearms in the vehicle, and the seizure of the first firearm from the vehicle or, alternatively, based on the reckless driving, furtive movements to the right, Mitchell's admission to drinking, and the open bottle of alcohol found in the backseat. As Mitchell notes in his Reply, the officers in the instant case uncovered an "explicitly incriminating object" in the location where they suspected it might be based on the furtive movements and after they had been told there were no firearms in the vehicle while no such object was uncovered in Davis. Likewise, an open bottle of alcohol is an "explicitly incriminating object" that, when coupled with the fact that Mitchell admitted that he was "sipping," gives more than enough probable cause to search the vehicle for additional alcohol. Thus, the Court can differentiate the findings here from those made by the Fourth Circuit in Davis.

Fourth, Mitchell argues that the Fourth Circuit's decision in United States v. Graham, 686 F. App'x 166 (4th Cir. 2017), supports his claim that the Government cannot rely on an

22

alternative theory other than what Officer Hunsaker testified to
to justify the search when the justification that he gave was
that he was conducting a "'second protective sweep.'" ECF No. 28
at 13-16. In Graham, the Fourth Circuit held that the search and
seizure of a firearm in a vehicle was not justified under the
exigent circumstances exception and declined to consider the
Government's alternative theory of probable cause because the
court declined to say "that any source of probable cause cures a
warrantless search and seizure—and especially not when that
source of probable cause is determined after the fact and where
the officers readily admit that their search and seizure was not
based on that source of probable cause." 686 F. App'x at 174.
Additionally, in Graham, the Government was attempting to
justify the seizure of the firearm based on one officer's plain
view of open containers of alcohol when it was a different
officer—who had no knowledge of the open containers—that seized
the firearm. Id.

In this case, the body camera footage worn by Officer
Hunsaker shows that he went into the front seat of Mitchell's
vehicle to do a "re-check" of the area after Detective Wilson's
initial search. Gov. Ex. 2 (Clip 6 at 0:39-0:45). And, during
the evidentiary hearing, while Officer Hunsaker did describe his
search as a "second protective sweep," he also described

23

Detective Wilson's initial search as a "protective sweep" while Detective Wilson testified (and as is clear from the body camera footage) that he was searching for "[a]ny narcotics, any alcoholic beverages, or any firearms," not that he was conducting a protective sweep for weapons. ECF No. 27 at 74:8-17. Thus, this case can be differentiated from Graham because the officers and the Government here were not devising a post-hoc explanation for why they had entered Mitchell's vehicle that was completely disconnected from the actual order of events. Rather, Detective Wilson conducted an initial search of the vehicle for alcohol, narcotics, and weapons, and Officer Hunsaker conducted a second search of the vehicle after the discovery of the first firearm strengthened the probability that there were additional weapons in the vehicle. Because of those important differences, the outcome of this case is not dictated by Graham.

Fifth, Mitchell argues that, once the bottle of alcohol was retrieved from the vehicle, the officers were not free "to search the entire interior compartment of the vehicle, because the contraband related to the crime they were investigating . . . had been seized." ECF No. 32 at 2-3. Mitchell supports this argument with a discussion of United States v. Washington, 439 F. Supp. 2d 589 (E.D. Va. 2006), where the court found that the

24

officer's search of the defendant's vehicle to retrieve an open bottle of alcohol was constitutionally permissible because the "limited search was 'focused on its objective and no more intrusive than necessary to fulfill that objective.'" Id. at 596-97. As the court noted in Washington, "a law enforcement officer cannot lawfully extend a vehicle stop once the applicable traffic citations have been issued, unless the officer has reasonable suspicion to believe that additional criminal activity is afoot." Id. at 596 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). In this case, the officers did have a reasonable suspicion to believe that additional criminal activity was afoot based on (1) the furtive movements to the right and (2) Mitchell's hesitation to draw attention to his right side. Those two facts indicated that additional contraband—whether that be more alcohol or something else—was present in the vehicle, so it was constitutionally permissible for the officers to extend the traffic stop to finish searching the vehicle. Accordingly, Washington cannot be interpreted to mean that the officers had to cease searching the vehicle once the open bottle of alcohol was seized as Mitchell contends.[10]

---

[10] Another key factual difference between Washington and this case is that the officers in Washington had issued citations to the defendant before locating the bottle of alcohol while the officers here had not issued any citations to Mitchell or any of

Accordingly, because none of Mitchell's arguments serve to overcome the Government's justification for the search, the Court found that there was probable cause to support the second search of the vehicle that ultimately uncovered the firearm that underlies the charges against Mitchell. Additionally, it is not necessary to decide whether there was a reasonable suspicion that Mitchell was both armed and dangerous to support a Terry frisk of the vehicle or whether the search was authorized under the officer safety rationale.

## CONCLUSION

In sum, the second search of the vehicle was constitutional under the Fourth Amendment because Officer Hunsaker had probable cause to look for additional weapons or alcohol in the vehicle. Likewise, none of the arguments presented by Mitchell negate such a finding on the facts or as a matter of law. Additionally, because the Court can determine that probable cause existed based on the facts as recounted above, the Court need not determine (1) whether there was a

---

the other passengers. Compare Washington, 439 F. Supp. 2d at 592 with ECF No. 27 at 32:14-33:3. Accordingly, the Washington court's discussion about extending a traffic stop is relevant to that case because the traffic stop there was ending. In contrast, that discussion is less relevant in the instant case because the traffic stop was still ongoing for three reasons: (1) no citation had been issued; (2) no arrest or detention was made; and (3) there was still at least a reasonable suspicion that criminal activity was afoot.

26

reasonable suspicion that Mitchell was armed and dangerous so that a Terry frisk was justified; and (2) whether suppression is the proper remedy. O'Neal v. Brennan, No. 1:14-cv-1770, 2015 WL 11109492, at *2 (E.D. Va. May 27, 2015) ("Because these arguments are so dispositive, the Court need not consider the defendant's other arguments."). Accordingly, the DEFENDANT'S MOTION TO SUPPRESS AND INCORPORATED MEMORANDUM OF LAW (ECF No. 18) and DEFENDANT'S REPLACEMENT BRIEF IN SUPPORT OF MOTION TO SUPPRESS (ECF No. 28) were denied.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 25, 2023

27